**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LIONELL G. MILLER,           :
                                 :     Civil Action No. 12-4470 (MAS)
                                 :
              Plaintiff,      :
                                 :
               v.           :     **OPINION**
                                 :
ROBERT FRALEY, et al.,       :
                                 :
              Defendants.    :

**APPEARANCES:**

      LIONELL G. MILLER, Plaintiff pro se
      #131659/104970C
      New Jersey State Prison
      11 Marshall Street, 3 Cell #41
      Passaic, New Jersey 07505

**SHIPP**, District Judge

     This matter comes before the Court on Plaintiff's submission of an amended Complaint. (ECF No. 7.) The Court is required to review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)[1] and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will allow the amended Complaint to proceed in part.

_____

[1] This Court granted Plaintiff's application to proceed in forma pauperis by previous Order dated April 23, 2013. (ECF No. 4.)

I. BACKGROUND

On July 18, 2102, Plaintiff, Lionell G. Miller ("Plaintiff"), filed an initial compilation of documents numbering 91 pages. (ECF No. 1.) The submission contained a caption naming 19 Defendants, including the Commissioner of the New Jersey Department of Corrections ("NJDOC"), the warden, administrator and assistant warden of the New Jersey State Prison ("NJSP"), numerous correctional officers and an unidentified John Doe. (*Id.*) The submission also contained a page stating conclusory allegations lacking any factual predicate. (*Id.* at 2-3.) In an Opinion and Order entered on April 23, 2013, this Court dismissed with prejudice Plaintiff's claims related to a failure to respond to his grievances or letters and his claims based solely on the theory of *respondeat superior*. This Court further dismissed without prejudice the remainder of Plaintiff's action, allowing Plaintiff to submit an amended pleading, provided that such amended pleading was executed in compliance with the requirements of Rules 8, 18 and 20, as detailed in the Court's April 23, 2013 Opinion. (ECF Nos. 3 and 4.)

On June 13, 2013, Plaintiff filed an amended Complaint (ECF No. 7), and on January 30, 2014, this Court re-opened this matter for screening of the amendment pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. (ECF No. 9.) In his amended Complaint, Plaintiff names as Defendants the following correctional officers ("SCO") at NJSP: SCO Robert Fraley, SCO McDonough, SCO J. Lindsey, SCO Thompson, SCO L. Viton, SCO A. Cobb, SCO B. Schafer, SCO E. Emrich, SCO S. Abrams, and SCO John Doe. Plaintiff also names as Defendants, Valisa Leonard, an officer with the Special Investigation Division ("SID") at NJSP, and Disciplinary Hearing Officer ("DHO") Lisa Jantz. (ECF No. 7, Am. Compl. at Caption and ¶¶ 5-29.)

Plaintiff alleges that on February 10, 12, and 19, 2011, certain items of his personal property were purposefully damaged while Plaintiff was not in his cell. When he complained

2

about the property damage, he was told to submit remedy forms, which he did. (*Id.*, ¶¶31-33.) On February 23, 2011, Plaintiff complained directly to NJSP Assistant Administrator William J. Anderson and Defendant SCO Thompson about the destruction of his property and was told that it is part of prison life. Anderson then told Plaintiff to file a remedy form and walked away. (*Id.*, ¶¶ 34-36.) That evening, Plaintiff returned to his cell and discovered that his cell toilet and his sneakers had been damaged. Plaintiff filed a remedy form and a grievance with the NJDOC Ombudsman and NJDOC Commissioner Gary M. Lanigan. (*Id.*, ¶ 37.)

In March 2011, while NJSP Administrator Greg Bartkowski was conducting a tour of the administrative segregation unit, Plaintiff informed Bartkowski that correctional officers were allowing inmates to enter Plaintiff's cell and destroy his personal property. Plaintiff also complained that his mail was not being delivered to him and that his remedy forms were unanswered. Bartkowski simply told Plaintiff to keep submitting forms. (*Id.*, ¶ 38.)

On March 17, 2011, when Plaintiff went to shower, he took a mirror with him to watch his cell. While in the shower, Plaintiff observed Inmate Johnson exit a cell in the location of Plaintiff's cell even though Johnson's cell was in the front of the tier. A correctional officer remained at the front gate looking down the tier as this occurred. After Plaintiff finished showering, Defendant SCO Fraley let Plaintiff out of the shower and Plaintiff started to return to his cell. On his way, Plaintiff noticed Inmate Johnson's cell door was open and as Plaintiff walked in front of Johnson's cell, Johnson approached Plaintiff and asked why Plaintiff was "submitting remedy forms about him." Plaintiff told Johnson he wasn't submitting remedy forms about him and started to walk away. Johnson came after Plaintiff, saying that he had "something to get off his chest." Plaintiff assumed a defensive stance and Johnson, who is 6'4"

and 270 pounds, pinned Plaintiff against the steel bars with all his weight and began to "savagely punch and knee" Plaintiff. (*Id.*, ¶¶ 39-45.)

This beating occurred for several minutes before correctional staff entered the tier and pulled Johnson off Plaintiff.  Plaintiff alleges that Defendants Fraley and McDounagh had stood at the front gate watching the attack. (*Id.*, ¶ 46.)  These officers pepper sprayed Plaintiff, threw him to the floor, handcuffed him, and took Plaintiff to the front of the tier to Defendant Lt. Emrich.  Emrich allegedly stated to Plaintiff that he "did not give a fuck about lawsuits." (*Id.*, ¶ 47.)  Plaintiff was taken to the infirmary where he remained for several days.  As Plaintiff was being taken to the infirmary, however, Anderson "looked Plaintiff in the eye and smiled from ear to ear." (*Id.*, ¶¶ 47-48.)

On March 18, 2011, while Plaintiff was in the infirmary, he was served with three disciplinary charges written by Defendant Fraley.  Plaintiff pled not guilty to the charges and asked for the video footage from the surveillance cameras located in the area where the incident occurred. (*Id.*, ¶¶ 49, 50.)  On March 21, 2011, Plaintiff was moved from the infirmary to the detention unit.  The next day, on March 22, 2011, Plaintiff submitted an administrative remedy form alleging that Inmate Johnson assaulted Plaintiff at the behest of correctional staff in retaliation against Plaintiff for filing a complaint and using the inmate grievance system. (*Id.*, ¶ 51.)

Plaintiff next alleges that his disciplinary hearing was adjourned several times because he had requested video tape evidence and a confrontation with Defendant Fraley, who wrote the disciplinary charges.  Plaintiff was informed by Defendant DHO Jantz that Plaintiff could not ask the majority of the questions that Plaintiff had wanted to ask Defendant Fraley.  Jantz also told Plaintiff that no video footage existed regarding Plaintiff's and Inmate Johnson's altercation,

but Plaintiff stated that he did not request that footage.  Rather, Plaintiff had requested the video surveillance tapes that would have shown Fraley letting Plaintiff out of the shower unit.  This video footage also was not produced.  (*Id.*, ¶¶ 52-54.)  Plaintiff was found guilty of three disciplinary infractions and was sanctioned 30 days detention, 270 days loss of commutation credits, 30 days loss of recreation privilege, and 450 days in administrative segregation.  (*Id.*, ¶ 55.)

Plaintiff complains that while he was in detention, a correctional officer "would scream out 'how about we leave you over here until June,' 'I am the law!  You have no rights except for what we give you,' and 'It was a rookie mistake.  Rookies are allowed to make mistakes.'"  (*Id.*, ¶ 56.)  After his 30 days detention was completed, Defendant Emrich kept Plaintiff in detention for 15 extra days.  He was placed in administrative segregation on April 30, 2011, but the same correctional staff defendants remained as Plaintiff's housing officers.  Consequently, Plaintiff's personal property continued to be stolen or damaged.  Plaintiff submitted a remedy form for stolen and damaged property on May 2, 2011 and a remedy form complaining that he was placed in a unit run by the same officers who had "previously attacked him and destroyed his property." (*Id.*, ¶¶ 57-59.)

On May 4, 2011, Plaintiff verbally informed Assistant Administrator Anderson that his personal property had been stolen and destroyed, and that he was housed in a unit run by the offending officers.  Anderson told Plaintiff to submit a remedy form as to the property complaint and that he would be moved once his "level" increased.  (*Id.*, ¶ 60.)

Plaintiff also complains that certain Defendant officers, Cobb, Viton and Abrams, repeatedly tampered with his food and food trays.  For instance, on May 15, 2011, Cobb served Plaintiff a food tray that had been sliced with a razor with the food leaking out.  On May 24,

5

2011, Cobb shook Plaintiff's food tray so that all the food mixed together. On June 15, 2011, Viton also shook Plaintiff's food tray, mixing all the food together. Even after Plaintiff had been transferred to a different tier in the administrative segregation unit,[2] this tampering with his food continued. On October 19, 2011, Defendant Abrams shook Plaintiff's food tray. On November 7, 2011, Defendant Herman also shook Plaintiff's food tray. On November 16, 2011, Abrams cut a hole in Plaintiff's hot pocket, causing the contents to leak out when Plaintiff picked it up. Also on November 16, 2011, Macaulery gave Plaintiff a tray which had a sharp steel shard concealed in the mashed potatoes. On January 18, 2012, Black shook Plaintiff's food tray. On January 25, 2012, Abrams shook Plaintiff's food tray. On each occasion, Plaintiff requested another food tray and was told to eat the one given or go hungry. Plaintiff submitted remedy forms, some of which were answered but most remained unanswered. (*Id.*, ¶¶ 61-64, 67-74.)

On February 24, 2012, Abrams placed paper under Plaintiff's grits and Plaintiff refused the tray, asking for a different one. Instead, Abrams slammed the food tray through the food slot and called for Plaintiff's cell door to be opened. Then three correctional officers escorted Plaintiff to the detention unit. On February 25, 2012, Plaintiff was served with two false disciplinary charges written by Abrams. On February 27, 2012, a disciplinary hearing was held and adjourned because Plaintiff had requested video footage from the surveillance camera to prove that he did not spill several food trays on the food cart causing Abrams to be delayed in feeding the tier. The disciplinary hearing was rescheduled on March 7, 2012. SID Investigator Leonard submitted a report stating that no video tape existed. Plaintiff refused to plead guilty to the second infraction of using abusive language. Plaintiff was removed from the disciplinary

---

[2] Plaintiff states that Defendant Emrich kept Plaintiff on level one status for one month after Plaintiff received a level increase on June 9, 2011. Plaintiff was moved on July 16, 2011. (*Id.*, ¶¶ 65, 66.)

hearing when he complained about the DHO discussing the evidence with a friend of Abrams. Plaintiff was returned to the hearing and was told that he would receive a decision shortly.  On March 13, 2012, Plaintiff received the DHO's decision, which had adjudicated Plaintiff not guilty on the first charge of conduct that disrupts the orderly running of the prison.  Plaintiff was found guilty of the second charge of threatening Abrams, and was sanctioned 15 days detention, 180 days loss of commutation credits, and 180 days in administrative segregation.  (*Id.*, ¶¶ 75-81.)

Plaintiff alleges that he filed an administrative appeal to Administrator Warren, on March 9, 2012, before he received the DHO's decision.  As of May 23, 2012, Warren had not responded to Plaintiff's appeal.  (*Id.*, ¶ 82.)

Plaintiff was released from detention on March 10, 2012.  His personal property was returned to him on March 13, 2012, and several items were missing.  While in administrative segregation, Plaintiff alleges that his personal property was damaged while Plaintiff was at recreation.  For instance, on April 3, 2012, one of his books was torn apart and the ribbon for his word processor was stolen.  In addition, the correctional staff tampered with Plaintiff's food trays on March 2, 2012, March 11, 2012, April 1, 2012, May 16, 2012 and May 17, 2012.  Plaintiff further states that SCO John Doe discarded Plaintiff's legal mail, which Plaintiff mailed on April 2, 2012 and May 3, 2012, with respect to his then-current federal lawsuit, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW).[3]  Plaintiff also makes a general complaint that he was denied access to the law library in NJSP.  (*Id.*, ¶¶ 83-88.)

---

[3] Plaintiff acknowledges that his lawsuit, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW), was dismissed for failure to exhaust administrative remedies, and that his appeal to the Third Circuit was dismissed for lack of jurisdiction. *Miller v. Ricci, et al.*, No. 11-2461.  (ECF No. 7 - Am. Compl. at ¶90.)

Plaintiff asserts that the Defendants have acted in retaliation against Plaintiff for filing a federal lawsuit, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW), against current and prior correctional staff at NJSP, and for filing administrative remedies, in violation of his First Amendment rights. (*Id.*, ¶ 91.)

Plaintiff also complains that Defendants Viton, Cobb and Abrams have acted maliciously and sadistically against Plaintiff by tampering with his food trays in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff further alleges that Defendants McDounagh and Fraley violated Plaintiff's Eighth Amendment rights by having Plaintiff attacked and beaten by another inmate. (*Id.*, ¶¶ 92, 93.)

Next, Plaintiff asserts that Defendant Doe denied his First Amendment right of access to the courts by discarding his legal mail. (*Id.*, ¶ 94.)   Plaintiff further claims that Defendants Fraley and Abrams violated Plaintiff's right to due process and equal protection by filing false disciplinary charges against him. In addition, Plaintiff alleges that DHO Jantz violated his right to due process and equal protection by adjudicating Plaintiff guilty on charges she knew or should have known to be false. (*Id.*, ¶¶ 95, 96.)   Plaintiff further claims that Defendant Emrich denied Plaintiff's right to due process by keeping Plaintiff in detention for 15 days after his detention time had expired, and that Defendant Viton violated Plaintiff's right to due process by destroying and stealing his personal property. (*Id.*, ¶¶ 97, 98.)

Finally, Plaintiff asserts a conspiracy pursuant to 42 U.S.C. § 1985(3), claiming that he is a "target of harassment by the named defendant[s] . . . based on his race as a Black Man and his current status as a prisoner in the New Jersey Department of Corrections." (*Id.*, ¶ 99.)   He alleges that Defendants McDounagh and Fraley entered into a conspiracy to have Plaintiff assaulted by an inmate and that Defendants Jantz and Leonard conspired with McDounagh and

Fraley to assist in concealing these acts.  (*Id.*, ¶ 100.)  Defendants Viton, Cobb and Abrams conspired to tamper with Plaintiff's food trays and cause Plaintiff to go hungry, and Defendants Schafer, Viton, Cobb Lindsey, Thompson and McDounagh conspired together to steal and destroy Plaintiff's personal property.  Finally, Plaintiff claims that all named Defendants conspired together to retaliate against Plaintiff for exercising his First Amendment rights in filing grievances and complaints.  (*Id.*, ¶¶ 101-103.)

Plaintiff seeks more than $100,000 in compensatory damages from Defendants, and $15,000 in punitive damages from each Defendant.  He also seeks a declaratory judgment that Defendants Fraley and McDounagh violated his Eighth Amendment rights by having Inmate Johnson attack Plaintiff, which constitutes a tort of assault and battery under New Jersey law. Finally, Plaintiff seeks the following injunctive relief:  (1) prohibiting Defendants from handling Plaintiff's food trays; (2) the return of Plaintiff's personal property confiscated on March 18, 2011; (3) prohibiting prison staff from interfering with Plaintiff's incoming and outgoing legal mail and requiring the delivery of legal mail to Plaintiff within seven days; and (4) reasonable access to the prison law library.[4]  (*Id.*, § H - "Relief Requested" at 23-26.)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.  Specifically, the PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be

---

[4] This Court need not address Plaintiff's requests for injunctive relief as such relief is based Plaintiff's claims regarding food tampering, interference with his legal mail, and deprivation of property, which are being dismissed as discussed *infra*.

granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).  Accordingly, because Plaintiff is a prisoner proceeding *in forma pauperis* in this matter, this action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

"The legal standard for dismissing a complaint for failure to state a claim under [the PLRA] is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Aruanno v. Green*, 527 F. App'x 145, 147 (3d Cir. 2013) (discussing 28 U.S.C. § 1915(e)(2)(B)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (28 U.S.C. § 1915A(b)).  According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, to prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Moreover, while pro se pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).  Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

## III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). *See also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

IV. <u>DISCUSSION</u>

A. <u>Access to Courts Claim</u>

Plaintiff asserts that Defendant John Doe has violated his First Amendment right to access the courts for redress of grievances by interfering with Plaintiff's legal mail.   The Supreme Court has long held that prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987).   A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975), *cert. denied*, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen generally states a First Amendment claim.  *See Jones v. Brown*, 461 F.3d 353 (3d Cir. 2006), *cert. denied*, 549 U.S. 1286 (2007) (holding that the legal mail policy of state prisons in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff); *see also Fontroy v. Beard*, 559 F.3d 173, 174-75 (3d Cir. 2009); *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995) (holding that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech, ... [and that] [s]uch a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court"), *implied*

*overruling on other grounds recognized in Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997).

However, a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury. *Watson v. Secretary Pennsylvania Dept. of Corrections*, --- F. App'x ----, 2014 WL 2200469, *1 (3d Cir. May 28, 2014) (citing *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996)).  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Watson*, *supra* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  Thus, where an inmate fails to show actual injury from an alleged interference with legal mail, dismissal of the claim is proper. *See Dubois v. Abode*, 142 F. App'x 59, 62 (3d Cir. 2005).  Nevertheless, "[p]risoners may establish a violation of the First Amendment without establishing actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence." *Schreane v. Holt*, 482 F. App'x 684, 676–77 (3d Cir. 2012) (per curiam) (citing *Jones*, 461 F.3d at 359); *see also Thompson v. Hayman*, No. 09–1833, 2011 WL 2652185, *5-6 (D.N.J. July 6, 2011) (noting that inmate did not have to show actual injury where he had demonstrated that his legal mail was opened outside his presence "repeatedly and continuously" for five months).

In this case, Plaintiff alleges that Defendant John Doe did not deliver two legal letters he posted to federal court, one addressed to the Clerk of the United States District Court for the District of New Jersey, and one addressed to the Honorable Freda L. Wolfson, U.S.D.J., regarding his then-pending action, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW).  However, the docket report for Plaintiff's earlier case reflects that several different submissions by Plaintiff

were received and docketed in that action during the time period at issue in April and May 2012.[5]
Thus, there appears to be no allegations that Plaintiff suffered repeated or continuous
interference with his legal mail.

Moreover, Plaintiff does allege any actual injury stemming from the two alleged,
isolated instances of interference with his legal mail. He admits in his Amended Complaint that
his earlier civil rights action, 11-859 (FLW), was dismissed for failure to exhaust administrative
remedies, and that his appeal from that decision was dismissed for lack of jurisdiction. There is
no allegation that these dismissals were the result of the two legal mail incidents that allegedly
occurred in April and May 2012. Therefore, where the allegations show that the alleged
interference with Plaintiff's legal mail involved only two isolated incidents and no actual injury
resulted to Plaintiff, this claim is dismissed for failure to state a claim.

B. Eighth Amendment Claims

Plaintiff next claims that certain Defendants violated his Eighth Amendment right to be
free from cruel and unusual punishment by tampering with Plaintiff's food trays and by having
Plaintiff attacked and beaten by another inmate.

1. *Food Tampering Claim*

The Eighth Amendment requires prison officials to provide humane conditions of
confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter,
and medical care, and must "take reasonable measures to guarantee the safety of the inmates."
*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–
527 (1984)). A prisoner asserting a conditions-of-confinement claim must show that the alleged

---

[5] While Plaintiff references this prior action in his amended pleading here, the Court also takes
judicial notice of that prior action, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW). *See Sands v.
McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Accordingly, the Eighth Amendment requires that prison officials provide nutritionally adequate food that is prepared and served under conditions that do not present an immediate danger to the health and well-being of the inmates who consume it. *Gregory v. Danberg*, Civil No. 08-539-GMS, 2011 WL 4480445, *5–6 (D.Del. Sep. 23, 2011). See also *Duran v. Merline*, 923 F.Supp.2d 702, 720 (D.N.J. 2013). The United States Court of Appeals for the Third Circuit has recognized that "only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim." *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009). *See also Shepler v. Jefferson Cnty. Jail Bd. Member*, Civil No. 13–0521, 2014 WL 122987, at *2 n. 5 (W.D.Pa. Jan. 13, 2014); *Gardner v. Lanigan*, Civil No. 13–7064, 2013 WL 6669230, at *3 n. 4 (D.N.J. Dec. 18, 2013) (citations omitted); *Duran*, 923 F.Supp.2d at 721 (citations omitted).

In addition, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official is deliberately indifferent, that is, the official knows of and disregards a substantial risk of serious harm to inmate health or safety. *Farmer*, 511 U.S. at 837, 847. The official must both be aware of facts from which he could infer that a substantial risk of serious harm exists, and he must draw that inference. *Id.* (holding that both subjective and objective components must be satisfied). *See also Watson v. Secretary Pennsylvania Dept. of Corrections*, ---F. App'x ----, 2014 WL 2200469, *2 (3d Cir. May 28, 2014).

Here, Plaintiff alleges 15 separate incidents over a course of one year when Defendants Viton, Cobb and Abrams shook Plaintiff's food trays, mixing the contents, and refused to give Plaintiff a new food tray. One incident involved a metal shard in Plaintiff's mashed potatoes.

15

While the allege conduct of these Defendants, if true, may be shameful and vindictive, Plaintiff does not offer facts to show with some plausibility that he endured a substantial deprivation, or anything more than temporary distress. Plaintiff has not alleged that he has suffered any effects of a prolonged and nutritionally inadequate diet, such as malnutrition, weakness, fatigue, or illness. Rather, he merely states that he went hungry for those individual days when the Defendants refused to give him another food tray. Plaintiff did not go without any food for any length of time and he had commissary food items available to him, although at some times Plaintiff alleges that his commissary access was restricted. Moreover, Plaintiff does not allege that the food was spoiled or contaminated, just simply mixed together because the Defendants shook his food trays. Consequently, Plaintiff's allegations of temporary distress do not establish an Eighth Amendment violation. *See Nickles v. Taylor*, Nos. 09–0313, 09–0557, 09–0679, 09–0952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) (holding that no Eighth Amendment violation was established where plaintiff offered no facts to show that he endured such a substantial deprivation). *See also Brown v. Sobina*, Civil No. 08-128E, 2009 WL 5173717, at *6-7 (W.D.Pa. Dec. 29, 2009) (holding that plaintiff did not show Eighth Amendment violation regarding spoiled food, where there was no evidence that he suffered more than temporary discomfort).

Moreover, a solitary discovery of a foreign object in his food, without more, is insufficient to state a claim upon which relief can be granted. *Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) (holding that "[a] single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected") (footnote omitted); *Murray v. Allen*, Civil No. 10–1014, 2010 WL 4159261, at *2 (E.D.Pa. Oct. 21, 2010) (finding that "an occasional incident of a foreign object finding its way into [prison]

food, while regrettable, does not raise a question of constitutional proportion") (internal quotation marks and citations omitted). Such allegations, while undoubtedly upsetting, do not rise to the level of an Eighth Amendment violation.

Therefore, this Court finds that the allegations in this Complaint do not satisfy the objective component, and this Eighth Amendment claim is dismissed accordingly.

2. *Failure to Protect Claim*

Plaintiff also claims that Defendants Fraley and McDounagh violated his Eighth Amendment rights by allowing Inmate Johnson to assault Plaintiff. This Court construes this allegation as a failure to protect claim in violation of the Eighth Amendment.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citations and internal quotations omitted). To successfully state a claim for failure to protect, Plaintiff must allege facts showing (1) he is "incarcerated under conditions posing a substantial risk of harm"; and (2) the prison official has a "sufficiently culpable state of mind" that amounts to "deliberate indifference to inmate health or safety." *See Farmer*, 511 U.S. at 834, 837, cited in *Bistrian v. Levi*, 696 F .3d 352, 367 (3d Cir. 2012). To determine whether officials operated with deliberate indifference, courts question whether they consciously knew of and disregarded an excessive risk to the prisoner's well-being. *Farmer*, 511 U.S. at 840–44; *Hamilton*, 117 F.3d at 747. As noted above, not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." *Farmer*, 511 U.S. at 837; *Wallace v. Doe*, 512 F. App'x 141, 144 (3d Cir. 2013); *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (holding that an "official must actually be aware of the existence of the excessive risk; it is

17

not sufficient that the official should have been aware"); *Jones v. Day*, Civil No. 03–1585, 2007 WL 30195, *3 (W.D.Pa. Jan. 4, 2007) (observing that "[i]t is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known"). *See also Jones v. Beard*, 145 F. App'x 743, 745 (3d Cir. 2005).

In his amended Complaint, Plaintiff alleges that both McDounagh and Fraley were in Plaintiff's housing unit, let Plaintiff in and out of the shower, and stood at the front gate watching the attack by Inmate Johnson without intervening. (ECF No. 7 – Am. Compl. at ¶¶ 39-46.) These allegations, if true, may support a claim of failure to protect. Accordingly, the Court will allow this claim to proceed at this time. To the extent that Plaintiff's state law tort claim of assault and battery are related to this Eighth Amendment failure to protect claim, the Court will exercise supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367(a), and will allow the claim to proceed at this time.

C.  <u>False Disciplinary Charges</u>

Next, Plaintiff alleges that the filing of false disciplinary charges against him by Defendants Fraley and Abrams violated Plaintiff's right to due process. However, the filing of false disciplinary charges does not constitute a denial of due process claim under § 1983 as long as the inmate was granted a hearing and an opportunity to rebut the charges. *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012); *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002); *Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986).

Here, Plaintiff does not allege that he was denied a hearing. Moreover, Plaintiff admits that he had the opportunity to rebut the charges because he was acquitted of one of the

infractions, namely, conduct disruptive of the orderly running of the institution.  Accordingly, this due process claim is dismissed for failure to state a cognizable claim.

Plaintiff also alleges that Defendant DHO Jantz violated his right to due process by finding Plaintiff guilty of the institutional infractions and imposing sanctions despite knowing the charges to be false.  As observed above, Jantz gave Plaintiff the opportunity to rebut the disciplinary charges and, in fact, acquitted Plaintiff of one charge.  Because Plaintiff has not alleged the denial of a disciplinary hearing or a meaningful opportunity to rebut the disciplinary charges against him, his claim against DHO Jantz likewise fails to state a cognizable claim for relief under § 1983, and it is dismissed accordingly.

D.  Detention Claim

Plaintiff also asserts that Defendant Emrich denied Plaintiff's right to due process by keeping Plaintiff in disciplinary detention for 15 days after Plaintiff's detention period had expired.  It is well-settled that placement in disciplinary detention will generally not create a liberty interest.  *Abdul-Aziz v. Ricci*, --- F. App'x ----, 2014 WL 2699758 at *2 (3d Cir. Jun. 16, 2014) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995) and *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000)).  Rather, a "liberty interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly sentenced." *Abdul-Aziz*, *supra* (quoting *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 484).  The Third Circuit has previously held that seven months in disciplinary confinement did not implicate a liberty interest. *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002).  Likewise, disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest. *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002); *see also Velasquez v. DiGuglielmo*, 516 F. App'x 91, 97 (3d Cir. 2013) ("four-month confinement in

19

the [restricted housing unit] does not constitute an atypical or significant hardship); *cf. Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding that eight years in administrative custody is atypical and implicates a protected liberty interest).

In this case, Plaintiff complains only of being held in disciplinary detention for an extra 15 days. However, he does not allege that the conditions in disciplinary detention were harsh enough to support a due process violation. Thus, this Court finds that the short duration and conditions of Plaintiff's disciplinary detention cannot be deemed atypical. Accordingly, this claim is dismissed for failure to state a cognizable claim for relief under § 1983.

E. Destruction or Loss of Personal Property Claim

Plaintiff further claims that Defendant Viton violated Plaintiff's right to due process by unlawfully stealing and destroying Plaintiff's personal property. This Court notes:

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530–36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12–1478, 2012 WL 4662487, at *4 (D.N.J. Oct.2, 2012). New Jersey provides for a post-deprivation remedy for unauthorized deprivation of property by public employees through the New Jersey Tort Claims Act, N.J. Stat. Ann.. § 59:1–1, *et seq. See Georges v. Ricci*, No. 07–5576, 2007 WL 4292378, at *8 (D.N.J. Dec. 4, 2007) (stating that the New Jersey Tort Claims Act "provides an adequate post-deprivation remedy to person, including

inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials.") (citations omitted).

   As an initial matter, Plaintiff does not allege that the actions of Defendant Viton were the result of an established state procedure.  Moreover, as noted above, New Jersey has enacted a post-deprivation remedy procedure.  Accordingly, Plaintiff fails to state a claim against Defendant Viton, for depriving him of his personal property.  *Accord Peterson v. Holmes*, No. 12–865, 2012 WL 5451435, at *4–5 (D.N.J. Nov. 7, 2012) (finding plaintiff failed to state deprivation of property claim where plaintiff alleged no facts that defendants deprived him of property pursuant to an established state procedure); *Stokes*, 2012 WL 4662487, at *4 (same). Therefore, this claim is dismissed with prejudice for failure to state a cognizable claim for relief.

F.  Retaliation Claim

   The amended Complaint further asserts that all of the wrongful actions by Defendants were taken in retaliation against Plaintiff for exercising his First Amendment rights, namely, for filing grievances against the Defendants and for filing a federal civil rights complaint. Specifically, Plaintiff alleges that Defendants had Plaintiff assaulted by another inmate, had Plaintiff falsely charged with disciplinary infractions, and subjected Plaintiff to cruel and unusual punishment by tampering with his food trays and destroying his personal property in retaliation for Plaintiff filing grievances and complaints.

   "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).  *See*

*also Crosby*, 465 F. App'x at 173.  However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

The filing of administrative grievances and complaints, as alleged by Plaintiff here, is protected conduct under the First Amendment, and thus, sufficient to support the first element of a retaliation claim.   *See Mitchell v. Horn*, 318 F.3d at 530 (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment).  Moreover, Plaintiff's allegations of allowing an inmate attack, tampering with his food trays, and destruction of personal property, most notably, his word processing equipment used to type complaints, may suffice in combination to show "adverse action" by Defendants intended to deter Plaintiff from exercising his rights, the second requisite element of a retaliation claim.[6]  *See Allah v. Seiverling*, 229 F.3d 220, 226 (3d Cir. 2000) (finding that plaintiff's allegations of cruel and unusual punishment were sufficient to state an adverse action); *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Emps.*, 732 F.Supp.2d 458, 473 (M.D.Pa. 2010) (finding that plaintiff sufficiently alleged adverse action in a retaliation claim where he alleged that defendants participated in and subjected him to unconstitutional conditions of confinement); *Jean–Laurent v. Lane*, No. 11–186, 2013 WL 600213, at *10 (N.D.N.Y. Jan.24, 2013) (citation omitted); report and recommendation adopted by, 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013) (finding that confiscation of prisoner's legal work could constitute adverse action); *Gonzales v. Carpenter*, No. 08–629, 2011 WL 768990, at *6 (N.D.N.Y. Jan. 3, 2011) (holding "theft, confiscation, or

---

[6] However, allegations that these Defendants verbally harassed and threatened Plaintiff would not alone be sufficient to show adverse action to support a retaliation claim.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012).

destruction of an inmate's legal documents can constitute 'adverse action' for the purposes of a retaliation claim") (citations omitted), report and recommendation adopted by, 2011 WL 767546 (N.D.N.Y. Feb. 25, 2011).

As to the third element of a retaliation claim, Plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse response. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (per curiam) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d at 333). Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation. *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

Here, Plaintiff alleges that the retaliatory conduct by Defendants occurred the day after Plaintiff filed his federal civil action, and during the time that his federal civil rights action was pending before the District Court.[7]  He also alleges that the retaliatory conduct occurred after

---

[7] This Court notes that the destruction of Plaintiff's personal property began on February 10, 2011, and all alleged retaliatory actions continued through May 17, 2012.  Plaintiff filed his first

Plaintiff filed administrative grievances.  These allegations, if true, may tend to show that the filing of a federal complaint and administrative grievances by Plaintiff was the motivating factor for the adverse actions taken by Defendants against Plaintiff.  Accordingly, Plaintiff's retaliation claim shall proceed at this time.

G.  Conspiracy Claim

Finally, Plaintiff asserts that Defendants are liable under 42 U.S .C. § 1985(3) for conspiring to have Plaintiff assaulted, falsely charged with disciplinary infractions, and subjected to cruel and unusual punishment by tampering with his food trays and destroying his personal property, in retaliation for Plaintiff exercising his civil rights by filing grievances and complaints.

To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal citations omitted).  To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).  The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point."  *Twombly*, 550 U.S. at 557.

The elements of a § 1985(3) claim are "(1) a conspiracy of two or more persons; (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws;[8] (3) an act in

---

federal civil rights action, *Miller v. Ricci, et al.*, Civil No. 11-859 (FLW), on February 9, 2011, the date he signed his complaint and mailed it for filing.

[8] The requirements for establishing a cause of action under 42 U.S .C. § 1985(3) are set forth in a line of Supreme Court cases beginning with the decision in *Griffin v. Breckenridge*, 403 U.S. 88

furtherance of the conspiracy; and (4) an injury to person or property or to the deprivation of any right or privilege of a citizen of the United States." *Petrossian v. Collins*, 479 F. App'x 409, 410 (3d Cir. 2012) (unpublished) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001)).

Here, the amended Complaint fails to provide any factual detail regarding the formation of a conspiracy as to all of the Defendants. Rather, Plaintiff relies solely on a bald and conclusory statement that the Defendants conspired to target Plaintiff for harassment based on his race and status as a prisoner. Thus, while Plaintiff provides factual detail of certain acts taken by certain Defendants, such as the dates of the alleged tampering with Plaintiff's food trays and personal property, Plaintiff does not allege with specificity that any parties entered into an actual agreement to violate his rights; he merely puts forth the conclusory legal statement that Defendants entered into a conspiracy. *See Bobo v. Wildwood Pub. Sch. Bd. of Educ.*, 2014 WL 2215935 (D.N.J. May 28, 2014) (observing that § 1985(3) claims are "predicated on the existence of a conspiracy"). Finally, Plaintiff also does not state, other than in conclusory fashion, that any Defendant engaged in these actions for the purpose of depriving him of equal protection or equal privileges and immunities. *See Drake v. Muniak*, 2014 WL 1665045, at *7 (D.N.J. Apr.24, 2014) (noting that "[w]ith respect to [purpose], a claimant must allege some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim").

This Court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (internal

---

(1971). There, the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102.

citation omitted).   Accordingly, Plaintiff's § 1985(3) conspiracy claim is dismissed without prejudice to his seeking leave to submit an amended pleading that would cure the deficiencies noted herein.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's § 1983 claims asserting food deprivation in violation of the Eighth Amendment, denial of access to the courts in violation of the First Amendment, and denial of due process with respect to false disciplinary charges, disciplinary detention, and destruction of property in violation of the Fifth and Fourteenth Amendments,  are dismissed with prejudice, as against all named Defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) is dismissed without prejudice for failure to state a claim at this time. Finally, Plaintiff's Eighth Amendment failure to protect claim asserted against Defendants Fraley and McDounagh, the related state law tort claim of assault and battery, and Plaintiff's retaliation claim asserted against all named Defendants, are allowed to proceed at this time.  An appropriate order follows.

MICHAEL A. SHIPP
United States District Judge

Dated:  2/5/15

26